STATE OF HAWAII, Plaintiff-Appellee, *v.* YUTAKA MITAKE, Defendant-Appellant

NO. 7358

NOVEMBER 12, 1980

PADGETT, ACTING C.J., BURNS, J. AND CIRCUIT JUDGE ACOBA IN PLACE OF CHIEF JUDGE HAYASHI, DISQUALIFIED

OPINION OF THE COURT BY PADGETT, J.

Appellant, after a jury trial, was convicted of the crime of Theft in the First Degree. He contends here that the identification made of him at trial by five witnesses was the result of a constitutionally impermissibly suggestive lineup. He further contends that if it is held that he has not sufficiently shown that the identification arose out of an impermissibly suggestive lineup, that his failure to so show arises from the refusal of the trial court at the pre-trial identification suppression hearing to permit him to examine the five witnesses during that hearing; and that that refusal violated his constitutional rights to due process under the Fifth Amendment to the United States Constitution and to compulsory process under the Sixth Amendment to the United States Constitution and the equivalent provisions of the Constitution of the State of Hawaii. We affirm the judgment below.

On the morning of June 1, 1978, two men walked in to Zales jewelry store in the Pearlridge Mall Shopping complex and, using a hammer, smashed in a glass case containing diamonds. They scooped up the diamonds, fled the store through the Mall Building, across the parking lot, down a wall, across the watercress farm, across Kamehameha Highway and into an automobile in Shakey's Pizza

Parlor parking lot on the makai side of that Highway. At trial, defendant was identified as one of the two thieves by two women working in the shop, one woman who was standing outside of the San Francisco Rag Shop next door as the thieves ran past, a man who was taking voter registrations at a booth in the Mall past whom the thieves ran and by an employee of Shakey's Pizza Parlor, where the thieves entered an automobile.

On June 23, 1978, prior to indictment, appellant appeared in a lineup along with four other oriental men with moustaches who were of similar size and height, all wearing aloha shirts. Appellant's counsel was present and indeed selected the other persons appearing in the lineup. The five witnesses were in a room together with appellant's counsel, who testified that no conversation took place between the witnesses. Appellant's counsel asked, but was not allowed, to question the witnesses prior to or after the lineup at the police station. He complained that of the five persons appearing in the lineup only appellant had acne. The two pictures taken of the persons in the lineup together appear in evidence as defendant's exhibit B.

Subsequently, appellant's counsel moved for an order suppressing and precluding for use as evidence at the trial, any identification of the defendant made by any witness on the grounds that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The Motion stated that it was made pursuant to *Hawaii Rules of Penal Procedure* (HRPP) 41(e) and 12 and was based on the record and files and the affidavit of counsel attached. The affidavit contained nothing that in any way supported the claim that there was a substantial likelihood of irreparable misidentification. Apparently, the term "photographic identification procedure" was a misnomer on the part of appellant's counsel since the June, 1978 identification proceeding was by a live lineup.

By stipulation, the motion for suppression was heard by the trial judge on the morning the trial was to com-

mence. At the hearing, appellant's counsel called and examined both the attorney who had represented appellant at the lineup and the detective in charge of it. No evidence that the lineup was suggestive was adduced other than the attorney's contention that his client was the only one with acne. After these witnesses had been called, appellant's counsel sought to call the five identification witnesses and was asked by the court to make an offer of proof prior to doing so. The offer which he made stated no facts indicating that the lineup had been impermissibly suggestive. The court, after examining the pictures taken of the lineup, denied the request to call the five witnesses on the ground that nothing in the nature of suggestiveness had been shown. The trial then proceeded.

At trial, the prosecution did not allude in any form to the lineup identification on direct examination. Appellant's counsel, however, introduced the lineup photos and cross-examined about the lineup identification. During the cross-examination, the first witness, Cathy Cox, stated that appellant was the only person in the lineup who looked like the person she had seen at Pearlridge. Alida Canencia testified that appellant's face was what called her attention to him in the lineup. Lawrence Baker said the same thing. Linda Chang Wyrgatsh also testified that she immediately recognized appellant at the lineup. Mellinger said that he picked the appellant out in the line because he appeared to be someone he had seen before.

While all five of the witnesses positively identified appellant as one of the two men and all, based on the testimony, had a good opportunity to see him at the time of the incident, there were discrepancies in their testimony and the degree of positiveness of the identification varied among them. Common experience at trials indicates that such discrepancies are not unusual but, in fact, are to be expected. The jury convicted the appellant.

Where it is claimed that a criminal defendant's rights have been infringed because of an impermissibly suggestive pre-trial identification procedure, a two-fold question is raised: first, whether the procedure was unneces-

sarily suggestive; and second, whether, even so, the identification at trial was reliable under the totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188, 34 L.ed.2d 401, 93 Sup. Ct. 375 (1972), *Manson v. Braithwaite*, 432 U.S. 98, 53 L.Ed.2d 140, 97 Sup. Ct. 2243 (1977). We see nothing in the record before us that indicates either that the lineup was impermissibly suggestive or that in the totality of the circumstances, the identifications made at trial were not reliable or, stated differently, that there was a substantial likelihood of misidentification.

Appellant, in his briefs, suggests that the fact that he was the only person in the lineup with acne is of significance, but none of the witnesses at trial either on direct or on cross-examination about the lineup even mentioned the fact that the appellant had acne. As a matter of fact, appellant's counsel did not inquire on the subject. Appellant also urges that the fact that the witnesses were all present in the same room at the time of the lineup is fatal. We do not agree. According to appellant's own counsel's testimony, there was no conversation among the witnesses during the lineup and we fail to see how there could be a constitutionally impermissible lineup based upon the mere presence of the witnesses (without conversation) in the same room during the lineup. Practicality must enter in to matters of this nature and there obviously is nothing inherently wrong with the procedure followed here. The lineup therefore was not shown to be suggestive and, as appellant concedes, it is his burden to establish that fact.

Moreover, of the five witnesses who identified him at trial, those who were closer, with a better opportunity to observe at the time of theft, made more positive identifications. Those who were further away admitted some doubt and indeed the defense produced one witness who was at some distance who could not make the identification. There being no showing of a substantial likelihood of misidentification, the evidence was properly allowed to go to the jury. *Neil v. Biggers, supra.*

Appellant contends, however, that he had a constitutional right, under the Fifth and Sixth Amendments to

the Constitution of the United States and the parallel provisions of the Hawaii State Constitution, to question the witnesses who were to identify him at trial during the course of the pre-trial suppression hearing.

To begin with, although Rule 41(e), *HRPP*, was given as a basis for the motion to suppress, it clearly is inapposite. This was not a case concerning the return or the use at trial of illegally seized property. Thus, the provision in Rule 41(e) requiring the judge to receive evidence is not applicable. The applicable rule is Rule 12(b)(3), *HRPP*. That rule, however, only requires that such motions be brought prior to trial. Rule 12, unlike Rule 41(e), does not expressly mandate an evidentiary hearing on a motion to suppress and, *a fortiori*, does not state what form evidence is to take or how such a hearing, if held, is to proceed. Thus, as far as the *Hawaii Rules of Penal Procedure* go, the way in which a pre-trial motion to suppress identification based on a claim of an improperly suggestive lineup is to be handled is left to the sound discretion of the trial judge.

Since the rules do not mandate a particular form of proceeding, appellant's position comes down to a flat assertion that whenever a motion for suppression of identification is made, the Fifth and Sixth Amendments of the United States Constitution and the provisions of the Hawaii State Constitution require that an evidentiary hearing be held prior to trial and that the defense must be allowed to question the identification witnesses at such hearing regardless of whether the defense has made any showing, to that point, of facts which would indicate impermissible suggestiveness in the lineup or even any showing that the defense has been unable to ascertain what happened at the lineup from the participants. We are unwilling to go so far. We prefer to follow the example set by the United States Supreme Court in the various identification cases and consider each case on its facts.

The *Hawaii Rules of Penal Procedure*, like the equivalent *Federal Rules*, do not permit a broad and free-ranging discovery in criminal cases. Specifically, they do not per-

mit the defense, except in limited situations, to take the depositions of the prosecution's witnesses prior to trial. If the Rule urged by appellant were to be adopted, then, in any case in which there was a pre-trial identification procedure, the defense by merely filing a motion to suppress the identification would be permitted to cross-examine all the identification witnesses prior to trial without making the slightest factual showing of suggestiveness in the pre-trial identification proceeding.

We do not doubt that there could be cases where we would hold that the failure to permit questioning of the identification witnesses at a suppression hearing constituted error as a matter of proper procedure and even as a matter of violation of constitutional rights under the Fifth and Sixth Amendments. On the record before us, however, this clearly was not such a case.

The motion and the affidavit filed in support thereof stated no facts indicating that the lineup was suggestive. As a matter of fact, the affidavit did not even state a conclusion to that effect. Nevertheless, the trial judge held a hearing. The attorney for the appellant who was present at the lineup testified and gave no facts indicating suggestiveness. The detective who conducted the lineup was called and examined and gave no such facts. He was not asked how the people were called to the lineup, what conversations he had with them before the lineup or what conversations he had with them, if any, individually or collectively after the lineup. When counsel for appellant proposed to call the identification witnesses, the court asked for an offer of proof. No facts in support of the contention of suggestiveness were given in that offer of proof. A suggestion was made that the court examine the photos taken of the lineup and the court did so and found the lineup not to be suggestive. The photos are in evidence, we have examined them and we agree. Counsel for appellant did not state to the court any facts indicating suggestiveness which he had obtained by interviews of the identification witnesses although from the record, it is obvious he had their names; nor did he state that he had

attempted to interview them and that they had refused to talk to him. Very frankly, on the record shown, the motion to suppress was frivolous.

The identification witnesses did testify at trial and were cross-examined rather sketchily by appellant's counsel. The cross-examination only serves to support the determination which the trial court had made at the hearing that the motion to suppress was without basis. It is clear, therefore, that the court did not abuse its discretion in refusing to allow examination of the identification witnesses at the suppression hearing and that no constitutional right of the appellant was violated thereby.

Appellant has cited *U.S. v. Williams*, 592 F.2d 1277 (5th Cir. 1979) in support of his position. In *Williams*, as the court said "the trial court made its determination based on the testimony of the government's witnesses without allowing the appellant an opportunity to call witnesses who may have testified in his favor." 592 F.2d at 1281. That is not the situation here. Appellant was allowed to and did call witnesses at the hearing. We, therefore, think that *Williams* is distinguishable on the record.

In the circumstances of that case, the appellate court held that, as a matter of proper procedure, the trial court should have permitted the identification witnesses to be called and examined. We do not read that case as saying that such an examination is a matter of absolute constitutional right. But if, as appellant contends, it is a holding of an absolute constitutional right to examine identification witnesses whenever a motion to suppress based on a claim of a suggestive pre-trial identification proceeding is made, without a showing of any facts in the record to support such a motion, we decline to follow it. The judgment below is affirmed.

Judge Acoba as an assigned judge in place of Hayashi, C.J., disqualified, dissents. His dissenting opinion will be filed subsequently.

*Richard Pollack (Steve Miyasaka* on the opening brief), Deputy Public Defender, for Defendant-Appellant.

*Christine Kurashige*, Deputy Prosecuting Attorney, for plaintiff-appellee.

### DISSENTING OPINION OF CIRCUIT JUDGE ACOBA

The precise issue is whether at an identification suppression hearing the defendant is entitled to call and examine as witnesses those persons who identified him at a pretrial lineup. Unquestionably the defendant has the right to exclude or suppress an in-court identification tainted by pretrial procedures which have given rise to a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Probably no evidence is more relevant and material in determining whether misidentification has occurred or not, than the testimony of the persons who made the identification. The effect of the majority opinion is to exclude such evidence from a suppression hearing, and therefore, I must respectfully dissent.

Whether the defendant is entitled to examine the identification witnesses at the suppression hearing must be determined from the objective of the constitutional protection claimed. The due process clause of the Fourteenth Amendment protects the defendant against the trial use of identification evidence obtained from pretrial identification procedures "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 384 (1968). The protection arises in lineup situations because "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial". *U.S. v. Wade*, 388 U.S. 218, 228 (1967). Where the likelihood of misidentification is established, identification evidence must be excluded from trial. *Id.* at 241; *Neil, supra*, 409 U.S. at 197. Thus, from an evidentiary point of view, a challenge to pretrial

identification evidence goes to the admissibility rather than to the weight of such evidence. *Stovall v. Denno*, 388 U.S. 293, 300 (1967). The U.S. Supreme Court "departed from the rule that the manner of an extra-judicial identification affects only the weight, not the admissibility of identification testimony at trial." *Simmons, supra*, 390 U.S. at 382. Because the issue is one of evidence admissibility, the issue is to be decided by the judge and not the jury: "Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." *Neil, supra*, 409 U.S. at 199; *Manson v. Brathwaite*, 432 U.S. 98, 111 (1977).

The time for ruling on the admissibility of identification evidence under the facts of this case was at the suppression hearing. Hawaii Rule of Penal Procedure 12(b)(3) requires that a motion to suppress must be made prior to trial. *State v. Reese*, 61 Haw. 499, 605 P.2d 935 (1980). The motion must be decided prior to trial "unless the court orders that it be deferred" to the trial or after verdict. H.R.P.P. 12(e). The decision was not deferred here. Consequently, the issue of admissibility was reserved for the suppression hearing.

At the suppression hearing defendant's claim of a substantial likelihood of misidentification "must be evaluated in light of the totality of the surrounding circumstances." *Simmons, supra*, 390 U.S. at 383. Each case must be considered on its own facts. *Id.* at 384. In considering each case on its facts, the U.S. Supreme Court has said:

> The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation.

*Neil, supra*, 409 U.S. at 199; *State v. Padilla*, 57 Haw. 150, 154, 552 P.2d 357 (1977).

These factors bear upon a witness' perceptions. They "are to be applied in determining the admissibility of [identification] evidence." *Manson, supra,* 432 U.S. at 116. On its face, a proffered examination of witnesses concerning the circumstances under which they made the pretrial identification is relevant and material to an evaluation of these factors. Accordingly, the defendant was entitled to examine the identification witnesses at the suppression hearing.

In *Commonwealth v. Lee,* 396 A.2d 755, at 757 (Penn. 1978), the court held that the testimony of the identifying witness was necessary for the court to determine whether pretrial identification testimony was "reliable" and thus admissible. In *U.S. v. Williams,* 592 F.2d 1277 (5th Cir. 1979), which the majority attempts to distinguish, the defendant filed a motion to suppress an allegedly suggestive photographic lineup. The trial court heard only the testimony of the government witness and "allowed no testimony by the identification witnesses regarding the suggestiveness of the lineup." *Id.* at 1281. The Fifth Circuit reversed, stating that "suppression hearings have little or no value unless the moving party is given wide latitude to develop the factual circumstances." *Id.*

In denying Appellant relief, the majority opinion cites three basic grounds.[1] First, it is said that the defendant failed at the suppression hearing to show the suggestiveness of the lineup procedure. In that connection the *Williams* court said:

> The Supreme Court in *United States v. Wade,* [citations omitted] recognized that there is a high incidence of miscarriage of justice resulting from suggestive presentation of a suspect in a pre-trial line-up

---

[1] Two subsidiary grounds are also implied. One is that the suppression hearing could be misused for improper "discovery." But "discovery" is properly limited by the purpose of the hearing. The other ground is that the defendant failed to show he was precluded from obtaining facts from the witnesses prior to the hearing. But no case requires counsel to contact identification witnesses beforehand as a condition to calling them at a suppression hearing, especially where, as here, the police report contained their statements.

identification. Although appellant's counsel was present during the line-up, the effectiveness of his presence was substantially undermined by not being allowed to show at the suppression hearing that the line-up was suggestive.

*Id.*

Similarly, the defendant here, although represented by counsel at the lineup, was precluded from showing its suggestiveness by exclusion of the lineup witnesses' testimony.

The second basic ground cited by the majority is that the defendant's offer of proof in support of the witnesses' testimony was insufficient. The record, however, indicates the offer was sufficient in light of the constitutional objective.

Defense counsel who was present at the lineup had testified that he objected to the lineup because the participants did not look similar to the defendant, and the defendant was the only one with "scraggly" hair and acne.

The detective in charge of the lineup had testified that defense counsel made several objections to the lineup, including an objection to the witnesses viewing the lineup together, and an objection to the detective prohibiting defense counsel from talking to the witnesses before and after the lineup.

Defense counsel had attempted to call the five identification witnesses at the hearing. His offer of proof was that the lineup was inaccurate because the police reports indicated the witnesses had given conflicting descriptions of the suspect, that the lineup was suggestive because only two people in the lineup had long hair, and that the other lineup participants had body structures different from that of the defendant. Because of the prior conflicting descriptions, defense counsel argued that only an examination of the eyewitnesses would reveal whether a substantial misidentification had occurred and whether an in-court identification would be tainted. Under these circumstances the

nature of the proffered testimony justified examination of the witnesses.

The majority's third basic ground is that the identification witnesses' trial testimony failed to show a likelihood of misidentification under the "totality of circumstances" test. It is not necessary to review the witnesses' testimonies, although they contain admitted inconsistencies. Because there was not an adequate opportunity to present facts on the circumstances surrounding the identification at the suppression hearing, the test is not applicable. As previously indicated, the question of identification testimony admissibility was for the suppression hearing. Accordingly, at the trial there was no attempt, as the majority's recounting of the trial testimony indicates, to delve into the facts underlying the "totality of circumstances" test. The trial examination of the identification witnesses, therefore, cannot be the basis for concluding identification had been reliably established under that test.

In addition, at trial, examination on identification is concerned with the weight such testimony is to be given on the ultimate issue of guilt or innocence, an issue on which the State has the burden of proof. Therefore, as in this case, the defense may, as a matter of trial strategy, rely on a perceived insufficiency of evidence to prove identity beyond a reasonable doubt. In that situation the defendant would not embark on a wide ranging examination on the identity issue. In that connection, the majority's observations that the identification witnesses were only "sketchily" examined by the defense and were not examined on items of claimed suggestiveness would imply that there was an obligation on the defense to pursue the admissibility issue at the trial. To require the defendant to do this at the expense of trial considerations is to unduly burden his right to a fair trial. This point was discussed in *Wade, supra*, 388 U.S. at 240-241:

The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference. We have already noted that the lineup identification will have that effect. The

State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. *Counsel is then in the predicament in which Wade's counsel found himself – realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification.* (Emphasis added.)

At trial neither party, although for different reasons, engaged in a searching factual inquiry of pretrial identification procedures presumed by the "totality of circumstances" test. Under these facts, the witnesses' trial testimony would not establish the reliability of the defendant's in-court identification.

The defendant also claims his right to compulsory process under the Sixth Amendment and Art. I, Sec. 11, U.S. and Hawaii Constitutions respectively, were violated. The "compulsory process" clause has been recognized as an alternative to the confrontation clause. The United States Supreme Court in *Washington v. Texas*, 388 U.S. 14, 87 S.C. 1920 (1967) made the compulsory process clause obligatory upon the states through the Fourteenth Amendment as a fundamental and essential component of a fair trial. The Court in *Washington* stated that "the right [to compulsory process] is, in plain terms, the right to present a defense." *Id.*, 388 U.S. at 20.

So fundamental and essential is this right, that it was held to prevail over a generalized claim of Presidential privilege and confidentiality in response to a *subpoena duces tecum* in *U.S. v. Nixon*, 418 U.S. 683 (1974). In *Nixon, supra* at 708, the Court said:

The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts . . . To ensure that justice is

done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or the defense.

Compulsory process was held applicable in *Nixon* to a situation involving pretrial discovery of evidence that might have mitigated in favor of the several Watergate defendants.

The Hawaii Supreme Court has said that:

> We have no doubt that the compulsory process provision in the Hawaii Constitution, Art. I, Sec. 11, was intended to guarantee an accused the right to have witnesses testify in his favor.

*State v. Leong,* 51 Haw. 581, 465 P.2d 560 (1970). In *Leong,* the court held that it was error for the trial court to prohibit the testimony of defendant's witnesses because they had violated the witness-exclusionary rule of the court.

Thus, it is clear that compulsory process stands not only for the proposition that a defendant is entitled to have witnesses testify in his behalf, but also for the proposition that a defendant is entitled to present a defense.

Here the defendant was foreclosed from examining the witnesses who made the identification. He was therefore foreclosed from obtaining and presenting facts which would be relevant and material in determining his constitutional claim. He was, in effect, prevented from presenting a defense.

The record indicates that the only evidence linking the defendant to the crime was the identification by the eyewitnesses. The State failed to prove that fingerprints and items of clothing recovered in the case belonged to the defendant. At trial the defendant had an alibi defense. Under the circumstances the error was not harmless beyond a reasonable doubt. *State v. Pokini,* 57 Haw. 26, 548 P.2d 1402 (1976), *cert. denied,* 429 U.S. 963 (1976); *Wade, supra,* 388 U.S. at 242. Accordingly, I would reverse and remand.