STATE OF HAWAII, Plaintiff-Appellee, *v.* YUTAKA MITAKE, Defendant-Appellant

NO. 7358

(CRIMINAL NO. 52104)

DECEMBER 29, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY OGATA, J.

On March 29, 1979, Petitioner-Defendant, Yutaka Mitake (hereinafter Petitioner), was convicted of Theft in the First Degree, in violation of HRS § 708-831(1)(b), in the Circuit Court of the First Circuit. On appeal, the Intermediate Court of Appeals affirmed Petitioner's conviction in a decision filed November 12, 1980. 1 Haw. App. 335, 619 P.2d 1078 (1980). On December 24, 1980, this Court granted certiorari to determine whether the trial court's refusal to allow Petitioner to examine the identification witnesses at a pre-trial suppression hearing violated Petitioner's constitutional rights under the due process and compulsory process clauses of the United States Constitution and the Constitution of the State of Hawaii. We find that Petitioner's constitutional rights were not violated, therefore, we affirm.

I.

On the afternoon of June 1, 1978, two oriental males entered the Zales jewelry store in the Pearlridge Shopping Center, smashed a glass display case and fled with a number of diamonds. At various points in their flight, they were seen by five eyewitnesses.

Approximately three weeks later and prior to indictment, on June 23, 1978, Petitioner appeared in a police lineup along with five other oriental males. All the participants were of roughly the same height, had dark hair, had mustaches and wore similar clothes. However, Petitioner's attorney at the lineup, Ronald Yonemoto, who had selected those appearing with Petitioner, lodged various objections concerning the fairness of the identification process. He complained of the varying builds of the participants, the use of a false mustache on one of the participants, and that Petitioner appeared to be the only one with "scraggly" hair and an acne complexion. Also, although the witnesses did not converse with each other during the viewing, he objected to the fact that all five witnesses viewed the lineup together, and that he had not been allowed to talk to the witnesses before or after the lineup. Notwithstanding these objections, all five witnesses identified Petitioner as one of the men involved in the theft.

Subsequently, on October 25, 1978, Petitioner was indicted by the grand jury for Theft in the First Degree.

On December 22, 1978, prior to trial, Petitioner moved to suppress the evidence of the lineup identification, pursuant to Rules 41(e) and 12 of the Hawaii Rules of Penal Procedure (hereinafter HRPP), on the ground that the lineup procedure had been impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

On the morning of January 29, 1979, immediately preceding Petitioner's jury trial, the hearing on the motion was held. Petitioner examined two witnesses, Yonemoto and Police Officer David Teller, the officer in charge of the lineup. Thereafter, Petitioner sought to call the five identification witnesses. In his offer of proof, Petitioner asserted that there was a possibility that the lineup had been suggestive. He cited Yonemoto's allegations that only two of the lineup participants had long hair, that the participants had differing body builds, and the descriptions given to the police by the identification witnesses were in conflict and also did not match the participants in the lineup. Petitioner argued, therefore, that he should be allowed to examine the identification witnesses because they are "[t]he only people who can speak in terms of substantial misidentification or whether the lineup was suggestive. . . ." The trial court, however, denied Petitioner's request. After viewing a photograph of the lineup,[1] and considering the testimony and arguments presented, the trial court denied Petitioner's motion to suppress, finding that the lineup procedure had not been impermissibly suggestive.

At trial, all five identification witnesses made in-court identifications of Petitioner. On direct examination, the State did not elicit any testimony concerning the pre-trial lineup identification. On cross-examination, however, Petitioner did question the five witnesses about the lineup. Petitioner's questioning on this point was brief and did not delve into the issue of the relative suggestiveness of the pre-trial line-up. No questions were asked concerning the builds, acne, or scraggly hair of the lineup participants. Subsequently, Petitioner was found guilty as charged.

The Intermediate Court of Appeals, in addressing Petitioner's constitutional claims, held that there is no right per se under the Fifth and Sixth Amendments to examine identification witnesses at a pre-trial suppression hearing. Any such right, the court stated,

---

[1] Defendant's Exhibit B.

would arise depending on the facts of the case. The court concluded, however, that under the facts presented in this case, there had been an insufficient showing to establish a constitutional right to examine the identification witnesses. Hence, the trial court did not err in prohibiting the examination.

## II.

In *United States v. Wade,* 388 U.S. 218 (1967), the Supreme Court recognized the inherent dangers and unfairness in confrontations for identification. As the Court remarked:

[T]he confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification.

*Id.* at 228.

A major factor contributing to the incidence of mistaken identification "has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." *Id.* at 228.

Accordingly, we have held that a confrontation which is "unnecessarily suggestive and conducive to inoperable misidentification" denies a criminal defendant due process of law. *State v. Masaniai,* 63 Haw. 354, 362, 628 P.2d 1018, 1024 (1981), *citing Stovall v. Denno,* 388 U.S. 293, 302 (1967). Any identification evidence, therefore, whether of the out-of-court confrontation, *Manson v. Brathwaite,* 432 U.S. 98 (1977); *Neil v. Biggers,* 409 U.S. 188 (1972); *State v. Masaniai, supra; State v. Naeole,* 62 Haw. 563, 617 P.2d 820 (1980), or the in-court identification, *Simmons v. United States,* 390 U.S. 377 (1968); *State v. Malani,* 59 Haw. 167, 578 P.2d 236 (1978); *State v. Padilla,* 57 Haw. 150, 552 P.2d 357 (1976), tainted by the suggestive confrontation procedures and without indicia of reliability is inadmissible as a matter of law. Alternatively, identification evidence will be admissible where "under the 'totality of circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers, supra* at 199.

Hence, when determining the validity of a timely pre-trial motion to suppress identification evidence[2] because of an alleged suggestive confrontation, the trial court must undertake a two-part inquiry. *See State v. Malani, supra.* First, the court must decide whether the procedure utilized was impermissibly suggestive. If so, the court then determines whether, despite the suggestiveness, the identification is nonetheless reliable.[3] If, however, impermissible suggestiveness is not established, "the question of the eyewitness identification's reliability need not be answered." *Id.* at 170.

In the instant case, Petitioner does not base his due process claim on the admission at trial of tainted identification evidence. Rather, he argues that by precluding the testimony of the identification witnesses at the pre-trial suppression hearing, the trial court rendered a "constitutionally defective determination" on the issues of impermissible suggestiveness of the lineup procedure and the relative likelihood of resulting misidentification. In short, Petitioner contends that the due process clause requires the examination of the identification witnesses under the facts presented.

Once it is determined that a pre-trial suppression hearing is warranted under the circumstances of a particular case,[4] we believe the due process clause requires that a defendant be afforded "a *fair*

---

[2] Petitioner's motion to suppress was made pursuant to HRPP 41(e) and 12. We agree with the Intermediate Court's assessment that Rule 41(e), is not applicable in this case insofar as there has been no Fourth Amendment, illegal search and seizure, violation alleged. The proper vehicle for the instant motion is Rule 12(b)(3).

[3] In Neil v. Biggers, *supra*, the Supreme Court enunciated the factors to be considered when determining whether an identification is reliable. This Court subsequently adopted the *Biggers* analysis in State v. Padilla, *supra*. The factors to be considered include:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime·and confrontation."

*Id.* at 154, *quoting* Neil v. Biggers, *supra* at 199-200.

[4] We recognize that the Supreme Court in its recent decision in Watkins v. Sowders, 449 U.S. 341 (1981), has held that the due process clause of the Fourteenth Amendment does not require a state trial court to hold an evidentiary hearing, out of the presence of the jury, on the issue of the admissibility of identification evidence. We do not interpret *Watkins* to hold, however, that there arises no constitutional protections once an evidentiary hearing of this sort is given.

hearing and a *reliable determination," Jackson v. Denno*, 378 U.S. 368, 377 (1964) (emphasis added), on the issue of the admissibility of identification evidence.

It does not necessarily follow, however, that a defendant will not receive a fair hearing nor that a reliable determination will be made whenever testimony by the identification witnesses is not taken by the court.

As we recognized, in determining the admissibility of identification evidence, the trial court must initially ask whether the confrontation had been impermissibly suggestive.[5] This threshold inquiry necessitates a reconstruction, by testimony and as aided by demonstrative evidence, of the scenario of the confrontation procedure.

To this end, Petitioner elicited the testimonies of Yonemoto and Teller, both of whom were present at the lineup. Their testimonies adequately described the procedure utilized and the composition of the lineup, and also specifically apprised the court of the factors which Petitioner believed rendered the lineup impermissibly suggestive.[6] These testimonies, moreover, were buttressed by the introduction of the photograph of the lineup.

We believe this evidence adequately re-created the scenario of the lineup procedure for the trial court's determination. Further,

---

[5] In denying Petitioner's motion to suppress, the trial court found, at the outset, that the lineup had not been impermissibly suggestive. It did not, therefore, make any determination as to the relative reliability of any identifications made at the lineup or which would be made in court.

[6] The testimonies of Yonemoto and Teller revealed that approximately three weeks after the Zale's robbery a police lineup was held at the Honolulu Police Station. From a police report describing the suspect as an oriental male, 5' 7" in height, and having a slender build, Yonemoto, representing Petitioner at the lineup, selected five other persons to appear in the lineup from a pool of eleven persons supplied by the police. All the lineup participants were Japanese males, had black hair, dressed alike, were of about the same height, and all had mustaches.

The viewing took place from adjoining rooms through a one-way window. The lineup room was well lit. The witnesses viewed the entire lineup from approximately ten feet. The individual participants were then asked to step up to the window, making the viewing distance three to five feet. Although the five identification witnesses viewed the lineup together, they did not converse during the showing.

At the lineup, Yonemoto raised several objections concerning the fairness of the confrontation. He alleged that only two of the lineup participants had slender builds, that one participant wore a false mustache, and that Petitioner appeared to be the only participant with scraggly hair and acne.

contrary to Petitioner's assertion, we do not find that the absence of testimony by the identification witnesses in this case rendered the re-creation incomplete. From an examination of the offer of proof and the evidence presented, there is no indication that the testimonies of the witnesses would have shown the lineup to be impermissibly suggestive.[7] We cannot conclude on the basis of speculation and conjecture, *i.e.,* that the examination of the witnesses could have revealed additional evidence showing suggestiveness, that the trial court made a defective determination. *See United States v. Kennon,* 447 F.2d 465 (4th Cir. 1971), *cert. denied,* 404 U.S. 1062 (1972); *State v. Maloney,* 295 Minn. 262, 204 N.W.2d 202 (1973).

Therefore, we find that, upon the evidence presented, the trial court could make a fair determination on the issue of impermissible suggestiveness. Consequently, the denial by the trial court to allow Petitioner to examine the identification witnesses did not deny Petitioner due process of law under the Fourteenth Amendment of the United States Constitution and Article I, sec. 5 of the Constitution of the State of Hawaii.[8]

### III.

Petitioner argues that this denial also violated his right to compulsory process for obtaining witnesses in his favor under the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, *Washington v. Texas,* 388 U.S. 14 (1967), and Art. I sec. 14 of our state constitution.

---

[7] Petitioner argues that discrepancies in the witnesses' descriptions to the police, possible defects in the lineup composition and the manner in which the lineup was conducted provided strong indications of impermissible suggestiveness requiring the examination of the witnesses. We do not agree. The cited factors, alone, do not indicate that there was a possibility of impermissible suggestiveness. *See* State v. Masaniai, *supra.*

[8] We do not believe this ruling to preclude the testimony of identification witnesses at a pre-trial suppression hearing in all instances. We recognize that under certain circumstances, for example, where the trial court undertakes a reliability determination under the *Biggers* analysis, the testimony of the identification witnesses may be indispensable. In those situations, testimony by the identification witnesses may be constitutionally required.

The right to compulsory process affords a defendant in all criminal prosecutions, not only the power to compel attendance of witnesses, but also the right to have those witnesses heard.[9] *Washington v. Texas, supra; State v. Bullen,* 63 Haw. 27, 620 P.2d 728 (1980); *State v. Leong,* 51 Haw. 581, 465 P.2d 560 (1970).

However, this right, while "a fundamental element of due process of law", *id.* at 19, does not guarantee the right to compel attendance and testimony of all potential witness absolutely.[10]

In *Washington v. Texas, supra,* the Supreme Court, in striking a Texas statute which prohibited an accomplice from testifying on behalf of a defendant, found that the defendant's right to compulsory process had been violated "because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23.

Thus, in a number of subsequent federal and state decisions, courts have held that unless the witness denied to defendant could have produced relevant and material testimony benefiting the defense, there exists no constitutional violation. *See, e.g., United States v. De Stefano,* 476 F.2d 324 (7th Cir. 1973); *People v. Dunigan,* 96 Ill. App.3d 799, 421 N.E.2d 1319 (1981). We find this rule especially helpful in the analysis of this case.

Here, Petitioner predicates the relevancy of the testimony sought on the fact that the identification witnesses were present and

---

[9] Although it has not been strenuously argued by the parties below, we think it clear that a defendant is entitled to the right to compulsory process at pre-trial suppression hearings. *See* State v. Owens, 51 Ohio App.2d 132, 366 N.E.2d 1367 (1975).

In Washington v. Texas, *supra,* the Supreme Court equated the right to compulsory process to, "in plain terms the right to present a defense. . . ." *Id.* at 19. We recognize that in this case, the issue of the admissibility of the identification evidence was to be resolved at the pre-trial suppression hearing. It was, therefore, incumbent upon the parties to present their respective arguments on this particular issue at this point in the proceedings. We believe that a denial by the trial court to compel a witness' attendance or to hear his testimony, without justification, would preclude the defendant an adequate opportunity to present a defense.

[10] For a discussion into the impediments to the right to compulsory process *see* Westen, *The Compulsory Process Clause,* 73 Mich. L. Rev. 71 (1974).

active participants at the lineup. However, Petitioner admits that the only basis for the examination of these witnesses was the possibility that their testimonies would reveal evidence of impermissible suggestiveness.

It is purely speculative then, as to what these witnesses would testify. As we found in our discussion of Petitioner's due process claim, the record contains no factual basis to indicate what the testimony would reveal or, more importantly, whether it would be of benefit to Petitioner. In fact, from the testimonies of the identification witnesses at trial, we cannot see how the examination of these witnesses would have benefited Petitioner at the pre-trial hearing. When questioned about the lineup on cross-examination, the witnesses' testimonies simply did not help in establishing any claims advanced by Petitioner.

We are mindful of the fact that the right to compulsory process is of paramount importance in assuring a defendant the right to a meaningful defense and a fair trial. However, we are also aware that this right is not without just limitations. One such limitation is that a defendant is only afforded the right to compel attendance and testimony of witnesses who can give relevant and beneficial testimony for the defense. We believe that before this Court can overturn a conviction based upon a claim of a denial of compulsory process, it must be shown that the testimony denied the defendant would have been helpful to him.

We find that insofar as it has not been adequately shown that the testimony of the identification witnesses would hve been relevant and beneficial to Petitioner's defense, the denial by the trial court did not violate Petitioner's compulsory process rights. Accordingly, the judgment of conviction is affirmed.

*Richard W. Pollack,* Deputy Public Defender, for petitioner-appellant.