**STATE OF HAWAII**, Plaintiff–Appellee, v. **GLENN JORDAN SEQUIN, SR.**, Defendant–Appellant

NO. 15550

(CR. NO. 87–1309)

JULY 14, 1992

LUM, C.J., WAKATSUKI, MOON, AND KLEIN, JJ.,
AND INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE BURNS, IN PLACE OF
LEVINSON, J., RECUSED

332

OPINION OF THE COURT BY KLEIN, J.

Defendant–Appellant Glenn Jordan Sequin, Sr. (Defendant or Appellant) appeals his conviction by a circuit court jury of four counts of Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712–1242(1)(c). We affirm.

Appellant urges three points on appeal. First, the trial court abused its discretion when it denied Appellant's motions to admit into evidence defense proposed exhibit C, an aerial photograph, and excluded a defense expert who would have referred to the

exhibit in his testimony. Second, the trial court abused its discretion when it denied Appellant the right to call Glenn Sequin, Jr., also known as "Whitey" (Whitey), to the witness stand and limited the scope of the testimony of Appellant's witness Stan Ornellas (Ornellas). Third, the trial court abused its discretion when it denied Appellant's motion to disallow, and later denied Appellant's motion to strike, the prosecution's rebuttal witness's lay opinion testimony.

## I. FACTS

The pertinent facts are as follows: At trial, Honolulu Police Department (HPD) Officer Heidi Marie Okata (Okata) testified that in May and June of 1986, she was assigned in an undercover capacity to attend cockfights to "make cases" against people who fought chickens and engaged in other illegal activities.

On or about May 31, 1986, she went to a cockfighting location in Ewa Beach at Renton Road posing as a person looking for her girlfriend. She stated that people would park their cars on Renton Road and then walk down a short overgrown footpath to a clearing which contained a large cockfighting pit. She first encountered Defendant near his vehicle, a large Bronco parked at the entrance to the cockfighting site off of the footpath.

On June 1, 1986, Okata returned to the area and observed Defendant talking to a man named Ike. Defendant gave Ike a hundred dollar bill. Ike left and when he returned he gave Defendant a clear plastic packet which contained a white powdery substance later determined to be cocaine. Defendant told Okata and a man identified by Defendant as his son to get into the Bronco where Defendant and his son used a rolled up matchbook cover to snort some of the powder. When the powder was passed to her, Okata asked if she could keep the rest; she was permitted to do so.

On June 7, 1986, Okata returned to the location and saw Defendant next to his Bronco which was again parked at the end of

the footpath. Once again, Okata observed Defendant snorting a white powder. Defendant placed some of the white powder onto a dollar bill, folded it up and gave it to her. The powder was later determined to be cocaine.

On cross–examination Okata indicated on defense exhibit A, a diagram of the cockfight area and abutting streets, where she parked her vehicle, the cockfighting area, the fighting pit, the place where she entered the property and the location of Defendant's Bronco. Okata was shown defense exhibit C, an aerial photograph of the area; however, she indicated that she did not recognize what it represented.

HPD Officer Joseph Makanani (Makanani) testified that he was supervising the gambling investigations on June 1 and June 7, in the area where Okata had obtained the evidence against Defendant. Makanani testified that he was familiar with the cockfighting area as it looked in June of 1986. When Makanani was shown defense exhibit C, the aerial photograph of the area, he testified that the area had changed significantly by December, 1986 when the photograph was taken. He then agreed that the photograph fairly and accurately depicted the location of the cockfights in June of 1986, but the area was overgrown and no longer in use when the photograph was taken.

Defense exhibit C was offered into evidence, and the State objected. The State argued that defense exhibit C could not assist the jury because the area was different and the jury would only be confused and misled. The State also pointed out that defense exhibit A, depicting the area in question and its relationship to different roads, had been previously admitted into evidence. On those bases the trial court again refused to admit defense exhibit C into evidence. The court also indicated that the exhibit showed additional details not relevant to the time in question which could further mislead the jury. Makanani reviewed defense exhibit A and indicated that the exhibit accurately depicted the cockfight area as

it looked in June of 1986. He pointed out the pertinent landmarks on the exhibit.

Defendant next presented an amended witness list to the trial court which included one Stan Ornellas. Defense counsel represented that, if called, Ornellas would testify regarding the location of the cockfighting pit, the dirt pathway, and the distance between the pathway and the pit. Defendant then offered his expert, Doug Mukai (Mukai), who would authenticate the aerial photograph and explain how distances could be measured on the photograph.

The State objected to the new witnesses since it had not had an opportunity to interview them. Neither the witnesses nor the aerial photograph had been disclosed by Defendant at the March 20, 1991 pretrial conference. The State contended that the testimony of the two witnesses would be irrelevant since neither Ornellas nor Mukai could testify regarding the June 1986 time frame.

The trial court allowed Ornellas to testify, but limited the testimony to only include his knowledge of the area. The court rejected Mukai, ruling that his proffered testimony would not change the fact that the aerial photograph did not reflect the cockfighting area as it looked in June of 1986. The court also pointed out that trial witnesses were to be listed "no later than [the] date of trial and that was a requirement for everyone."

Defendant next offered Glen Sequin, Jr., also known as Whitey, as a witness. Although Whitey was not named on Defendant's witness list, a catch-all category of potential witnesses included "[a]ny and all witness[es] reflected in [the] police reports." Defendant said that Okata mentioned Whitey in her testimony.[1] Defendant had Whitey sit in the courtroom during

---

[1] Q. [By defense counsel]: Okay, that's when, according to your testimony, you, Lionel and his son or somebody introduced to you as his son go into the Branco [sic]?

A. [By Officer Okata]: Yes.

Q. Correct?

part of the cross–examination of Okata, and when called upon to do so, Okata was unable to identify him from the gallery.

In ruling on the State's objection to Whitey, the trial court recalled his presence in the gallery, and the State's objection at that time. The objection was based upon the "witness exclusion rule" to which Defendant had agreed. The court ruled that Defendant could not call Whitey to the stand. However, defense counsel, the State and the court agreed to allow the defense to argue in closing that Whitey was in the courtroom during the beginning of Okata's cross–examination, but Okata was unable to identify him. The prosecution would be permitted to argue that it was not clear that the person in the gallery was in fact the son who was at the cock-fight area in June of 1986.

In its rebuttal, the State called HPD Officer Ben Anchetta (Anchetta). Anchetta testified that he was the overall supervisor of the undercover operation in May and June of 1986. He testified that he had been to the Renton Road location at least 200 times. Because access was barred, Anchetta could not take actual measurements of the distances at issue. Instead, he used a strollermeter

---

A. Yes.

Q. Okay. Now, in the Branco [sic], the son or this person who was introduced to you as his son is the one that hands you the packet, right, not Lionel?

A. Yes.

Q. Right? Okay. Now, when Mr. Sequin introduced somebody as his son, did he — did he associate a name or did he give a name in connection with this person, the son?

A. I don't recall.

Q. You don't recall if he said this is Whitey, my son?

A. I recall that name.

Q. You recall the name Whitey, yes?

A. Yes.

Q. He was not the gentlemen [sic] you saw earlier this morning in the courtroom?

A. He could have been, but I can't stake my life on it.

to measure 50, 100, and 150 feet distances on a flat, paved area, and then returned to the cockfighting arena to make estimates of certain distances. He estimated the distance between the end of the dirt pathway and the cockfight pit to be about fifty feet. The distance between the end of the dirt pathway to the back of the property was about 250 feet.

## II. DISCUSSION

### A. The Aerial Photograph

Defendant argues that the trial court erred in excluding defense exhibit C, the aerial photograph of the area taken in December 1986, some six months following the undercover operation. The aerial photograph was crucial to the defense because it would illustrate the precise location of the cockfighting pit, with respect to the driveway, and would emphasize the discrepancies in Okata's testimony as to the location of the pit and the area where Appellant was parked. Defense expert Doug Mukai would utilize the exhibit to calculate the distances between certain points as depicted on the exhibit.

We review the trial court's exclusion of a photographic exhibit under the abuse of discretion standard. *See generally State v. O'Daniel*, 62 Haw. 518, 527, 616 P.2d 1383, 1390 (1980) (the trial court is vested with discretion in admitting evidence at trial and such a decision will not be reversed absent an abuse). As we have stated, "[t]he test determining whether photographs may be shown to the jury is not whether they are necessary, but whether their probative value outweighs their possible prejudicial effect." *State v. Apao*, 59 Haw. 625, 639, 586 P.2d 250, 260 (1978) (quoting *People v. Steger*, 16 Cal. 3d 539, 128 Cal. Rptr. 162, 170, 546 P.2d 665, 674 (1976); *see also State v. Ahlo*, 2 Haw. App. 462, 466, 634 P.2d 421, 424–25 (1981), *cert. denied*, 456 U.S. 981 (1982) (citation omitted).

The trial court's exclusion of the photographic exhibit in the present case was based upon a determination that the photograph did not substantially depict the area as it existed in June 1986, and that the exhibit could thereby mislead the jury. In addition, there was another diagram admitted into evidence as defense exhibit A, which more clearly portrayed the area of the alleged offenses.

We cannot disagree with the trial court's ruling based on the abuse of discretion test. Okata was unable to recognize the aerial photograph and did not "even see where Renton Road was on the photograph." Makanani testified that he recognized the general area, the abutting streets and the cockfight area but he could not identify the cockfighting pit or the dirt pathway leading from Renton Road to the cockfighting area because of the overgrowth. Although Makanani agreed that otherwise the photograph fairly and accurately depicted the area as it looked in 1986, his testimony clearly showed that the photograph was not a fair and accurate representation of the cockfighting area as it looked in early June of 1986. We find that the aerial photograph was properly excluded because it did not subsequently depict the cockfighting pit and its immediate environs.

Since the aerial photograph was properly excluded, it follows that the court did not err in disallowing defense expert Mukai's testimony which would have been based upon the exhibit.

## B. The Exclusion of Whitey and the Limitation of Ornellas's Testimony

### 1. Whitey's Exclusion

The defense failed to list Whitey on its pretrial witness list, but offered to call him to testify on the fourth day of trial regarding "his name and any nicknames that he may have had, and possibly his general appearance back in May and June of 1986." Because Whitey had been in court briefly during Okata's testimony on cross–examination, the prosecution objected based on a claimed

violation of the witness exclusion rule (rule),[2] and the court excluded Whitey.

We have said that where the rule has been invoked and clearly violated, the appropriate sanction is discretionary with the court. *State v. Moriwaki*, 71 Haw. 347, 353, 791 P.2d 392, 395 (1990). The court's discretion is limited in a criminal case if the rule has been violated by a defense witness. Because of sixth amendment concerns and the dictates of article I, § 14 of the Constitution of the State of Hawaii, we have held it to be error for a trial court to refuse to permit a defense witness to testify as a penalty for violating the rule. *State v. Leong*, 51 Haw. 581, 583–86, 465 P.2d 560, 562–63 (1970).

On the first day of trial, defense counsel agreed to the invocation of the rule by the court. Nevertheless, on the second day of trial, with Okata on the witness stand and Whitey present in the gallery, defense counsel asked Okata, "do you recognize anyone in the courtroom, in the gallery, this morning?" She responded in the negative. Whitey was then signalled out of the courtroom. When Whitey was later offered as a defense witness, the court determined that his brief attendance during the question posed to Okata constituted a violation of the rule and Whitey was excluded.

The purpose of the rule is to codify "the long established practice of sequestering witnesses to discourage or expose fabrication, inaccuracy, and collusion." *Bloudell v. Wailuku Sugar Co.*, 4 Haw. App. 498, 504, 669 P.2d 163, 169 (1983); *see also State v. Elmaleh*, 7 Haw. App. 488, 492, 782 P.2d 886, 889, *cert. denied*,

---

[2] Hawaii Rules of Evidence (HRE) 615 provides:

**Exclusion of witnesses.** At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

70 Haw. 666, 796 P.2d 502 (1989).  We fail to see how Whitey's presence in the courtroom for the identification question violated the rule.  While he was there he did not observe or hear anything which would be relevant or material to the testimony he would later have given.  To hold otherwise would be to prohibit gallery identifications of subsequent trial witnesses altogether.[3]  We hesitate to do so and conclude that the lower court erred by excluding Whitey as a rule sanction.

However, given defense counsel's offer of proof, Whitey's exclusion was proper on a separate basis.  According to counsel, Whitey would be called as a witness to testify to his identification, nicknames, and general appearance in May and June 1986.  Because Okata failed to identify Whitey from the gallery, it would follow that Okata's testimony about sitting with defendant and his son in the Bronco while they snorted cocaine on June 1, 1986 would lack credibility.  However, before Whitey's offer of proof would become relevant to the issue of Okata's credibility, there would have to be sufficient foundational proof that Whitey was the same son who participated in the events of June 7, 1986.  Okata never stated that she was with Defendant's son Whitey on the date in question.  *See infra* note 1.  The offer of proof does not indicate that Whitey would testify to that effect either.  Because the defense failed to lay the proper foundation for Whitey's testimony, we conclude that the offer of proof concerning him was not probative of any fact in issue at trial and thus constituted irrelevant, inadmissible evidence.[4]  *See* Hawaii Rules of Evidence (HRE) 402.  As we

---

[3] We do not condone the gallery identification procedure used in this case by defense counsel, because no prior notice was given to the court.  Surprise tactics such as this often detract from the court's decorum and its responsibility to conduct orderly proceedings.  Because she failed to sanction defense counsel, we must assume that the trial judge was not affronted.

[4] Aside from the irrelevance of Whitey's proposed testimony, we note that defense counsel essentially withdrew any objection to the exclusion of Whitey by proposing and agreeing to a compromise position:

stated in *State v. Mitake*, 64 Haw. 217, 225, 638 P.2d 324, 330 (1981):

> We are mindful of the fact that the right to compulsory process is of paramount importance in assuring a

---

[Defense counsel]: How about this, I — I hear what the Court informed me about making reference to it in argument, and it's a small part of my argument, I tell you that, I mean a very small part, but it's an important part, and I — I don't know how else to tell the jury that, you know, I will represent to you that you know, Junior was present or that was Junior. If the Court permits me that, then I will stop with Mr. Sequin.

In other words, if the Court will permit me to state I will represent to you that that was Mr. Sequin Jr., period, then I won't ask the Court to call him as a witness.

The trial judge restated defense counsel's compromise for the benefit of the prosecuting attorney who agreed.

THE COURT: What I had indicated was that [defense counsel] could argue that that person at the back was in fact the son, Mr. Sequin's son. You would be allowed to argue the fact that it's not clear as you had noted earlier that that in fact is the person that was being referenced that day.

[Prosecutor]: All right. That's fine. I can live with that.

Later, defense counsel argued to the jury in closing:

You recollect Tuesday morning, I asked [Okata] to look into the gallery and see if she recognized anybody. She looked back there and she did not recognize Glenn Jordan Sequin, Jr. who was seated back in the gallery, also known as Whitey. And you remember the question, you wouldn't remember a person named Whitey at an Ewa cock fight? The highlight and the problem presented by that non recognition of somebody she says was in the truck almost five years ago, is that memory is an [sic] frail instrument.

Now, remember where, according to her, did this clear plastic packet come from? It didn't come from Mr. Sequin. It supposedly came from his son who she doesn't recognize, okay?

The defense arguably received a greater benefit from having Whitey excluded as a witness than it would have if he had testified. During its closing argument, the defense demonstrated to the jury that 1) Whitey was the defendant's son; 2) Whitey was present in the gallery during Okata's testimony; and 3) Okata failed to identify him. The closing remarks allowed the jury to question Okata's credibility without the defense having to expose Whitey to the risk of cross–examination.

defendant the right to a meaningful defense and a fair trial. However, we are also aware that this right is not without just limitations. One such limitation is that a defendant is only afforded the right to compel attendance and testimony of witnesses who can give relevant and beneficial testimony for the defense.

Because the trial court correctly excluded Whitey, albeit for the wrong reasons, we must affirm the result. *See Shea v. City & County*, 67 Haw. 499, 507, 692 P.2d 1158, 1165 (1985).

### 2. Ornellas's Testimony

Ornellas was a late–named witness who was generally familiar with the site but could not recall whether he was present there on the dates in question. Accordingly, he was permitted to testify that in 1983 or 1984 he cleared kiawe trees from the area and that he knew the distance between the pit and the dirt pathway to be 125 to 150 feet. Ornellas was also allowed to testify as to "his knowledge, if any, with regard to the June 1st through June 7th [1986] time frame." The court disallowed *in limine* any testimony from Ornellas about where people generally parked their vehicles and the usual size of the crowd.

We conclude that the trial court did not abuse its discretion in limiting Ornellas's testimony, because he was allowed to give crucial testimony regarding the distances, but was not permitted to relate irrelevant factual information.

### C. The State's Rebuttal Witness

The State called Officer Ben Anchetta in rebuttal to estimate the distances between certain landmarks at the site. Anchetta used a strollermeter to measure distances of 50, 100, and 150 feet adjacent to the property which was gated and secured. He then estimated the distances between landmarks on the property which were visible by referring to the measurements he had laid out.

There was no objection to Anchetta's testimony at trial, but we address the issue on appeal pursuant to Hawaii Rules of Penal Procedure (HRPP) 52(b).[5]

Defendant claims that the lay opinion evidence related by Anchetta violated HRE 701[6] because his opinions or inferences were not rationally based on his perception and were not helpful to either understanding his testimony or determining a fact in issue. We disagree.

Anchetta's opinions regarding the distances in question were based upon his first–hand knowledge and perception and may have been helpful to the jury. *See* A. BOWMAN, HAWAII RULES OF EVIDENCE MANUAL § 701–2 (1990). They were supported by measured reference points and were clearly as admissible as the estimates given by defense witness Ornellas. Given the liberalized approach to such lay opinion testimony embodied in Rule 701, HRE, the trial court's ruling allowing Anchetta's testimony was correct.

## III. CONCLUSION

Based upon our review of the record and our discussion of the points raised on appeal, we affirm the judgment of the lower court.

*Christopher Evans* for Defendant–Appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

---

[5] HRPP 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

[6] HRE 701 provides:

> **Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.