**Electronically Filed
Supreme Court
SCWC-10-0000102
04-DEC-2015
09:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

NORMAN SAMSON and FRANCINE SAMSON, Individually,
and as Guardians Prochein Ami of KU'ULEILANI SAMSON, a Minor
Petitioners/Plaintiffs-Appellants,

vs.

NOLA ANN NAHULU,
Respondent/Defendant-Appellee.

_____

SCWC-10-0000102

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000102; CIVIL NO. 08-1-0171-01)

DECEMBER 4, 2015

RECKTENWALD, C.J., NAKAYAMA, MCKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This appeal arises from a motor vehicle-pedestrian accident in which a vehicle operated by Respondent-Defendent-Appellee Nola Ann Nahulu ("Nahulu") struck a minor ("Minor") as she crossed Farrington Highway on foot.  At trial, the parties disputed Nahulu's speed and whether Minor was in a crosswalk at

the time she was hit.  A jury returned a unanimous special verdict finding Nahulu not negligent.

Petitioners/Plaintiffs-Appellants Norman Samson and Francine Samson (hereinafter "the Samsons"), individually and as guardians prochein ami of their daughter, Minor, challenge (1) specific jury instructions, (2) the instructions as a whole, which allegedly misstated the standard of care in automobile-pedestrian collisions, (3) the exclusion of certain testimony about Nahulu's speed, and (4) the exclusion of a photograph with markings made or authorized by a witness during his deposition that placed Minor in a crosswalk.[1]  The ICA affirmed the Circuit Court of the First Circuit's (circuit court) judgment.

_____

[1]     The Samsons present the following questions on certiorari:

1.    Did the ICA grievously err in affirming the verdict in favor of an SUV driver where erroneous instructions, taken as a whole, gave the wrongful impression that a pedestrian must strictly adhere to traffic rules or forfeit the right to any recovery from a negligent driver who injures the pedestrian.

2.    Did the ICA grievously err in holding that, although the lower court erroneously excluded eyewitness testimony that Nahulu was "traveling at an unsafe speed," the error was nevertheless harmless.

3.    Did the ICA grievously err in excluding from evidence a copy of another photograph already in evidence on which a key eyewitness confirmed a marking on the photograph showing [Minor's] location at the time Nahulu hit her (which was within the crosswalk), based on an erroneous objection to and erroneous finding of unfair prejudice.

4.    Did the ICA grievously err in holding that an instruction that is vague, incomplete and grammatically incorrect concerning Nahulu's duty of care, and therefore presumptively harmful, did not

(continued. . .)

In this case, the jury instructions erroneously focused on a pedestrian's obligation to obey all traffic laws rather than a driver's obligation to avoid collisions. Instruction No. 6 (as modified) quotes from State v. Arena, 46 Haw. 315, 379 P.2d 594 (1963). That case was premised on the existence of contributory negligence, which was eliminated by the passage of Hawaii's comparative fault statute, Hawai'i Revised Statutes (HRS) § 663-31 (1993). Instruction No. 6 (as modified) incorrectly suggested that a driver need not look out for pedestrians violating the law and that civil recovery is not available to a contributorily negligent plaintiff. The giving of the instruction constitutes prejudicial error necessitating a new trial. In addition, the instructions as a whole were prejudicially erroneous.

We hold as follows: (1) Instruction No. 6 (as modified) is erroneous as a matter of law; (2) Arena is overruled to the extent that it is contrary to HRS § 291C-74 (2007) and gives the incorrect impression that a pedestrian forfeits a right to recover from a negligent driver if he or she does not strictly adhere to traffic rules; (3) the jury instructions as a whole misstated the law by improperly focusing on a pedestrian's

_____

(. . .continued)
        require reversal because the ICA concluded that the
        Samsons failed to show that the faulty instruction
        had a detrimental effect on them.

duties to obey all traffic laws and were prejudicially erroneous; (4) the circuit court erred in excluding certain testimony on Nahulu's speed; and (5) the circuit court erred in excluding the photograph with markings made or authorized by the witness during his deposition.

Accordingly, we vacate the ICA's May 2, 2014 Judgment on Appeal, entered pursuant to its March 31, 2014 Memorandum Opinion, which affirmed the circuit court's August 9, 2010 Judgment and September 29, 2010 Order Denying Plaintiffs' Motion for Judgment Notwithstanding the Verdict and/or, In the Alternative, for New Trial ("JNOV motion"),[2] and remand the case to the circuit court for a new trial and further proceedings consistent with this opinion.

## II. Background

### A. General Factual Background

On July 4, 2005, Nahulu's Honolulu-bound SUV struck Minor in or near a crosswalk as she crossed Farrington Highway near the Jade Street intersection. Prior to the collision, Minor had waited with her friend at a bus stop on the Honolulu-bound side of the road. There is a bus cutout located on the outside of the Honolulu-bound lane for buses to service passengers. At the

---

[2] The Samsons titled the filing as a JNOV instead of as a judgment as a matter of law (JMOL) as provided under Hawai'i Rules of Civil Procedure (HRCP) Rule 50.

4

time of the accident, two buses had pulled into the cutout. The first bus operated by McKenna Benson ("Benson") was forty feet long and the second bus was sixty feet long.

As she approached the intersection from behind the bus cutout in the Honolulu-bound direction, Nahulu saw one bus pull into the bus cutout and began to decelerate. After Benson pulled his bus all the way into the cutout, he looked in his side view mirror to ensure that he had provided enough space for the second bus to pull in. From his perspective, both of the buses appeared as "one long bus" with no part of either bus blocking the lane of traffic; however, he could not recall whether the buses were completely off or partially on the road. Arthur Joao ("Mr. Joao"),[3] the driver of a pickup truck following behind Nahulu's SUV, and his wife Betty Joao ("Mrs. Joao"), his passenger, stated that the bus was not completely off the road, but did not impede the flow of traffic.[4]

---

[3] We note that the reading of Mr. Joao's deposition designations was not transcribed by the court reporter as required by Roxas v. Marcos, 89 Hawai'i 91, 100 n.2, 969 P.2d 1209, 1218 n.2 (1998), which states that "in future cases in general, the circuit courts should require that any deposition testimony read into evidence . . . be transcribed by the court reporter as if it were live testimony." See also HRS § 602-4 (1993) ("The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law.").

[4] During his deposition, Mr. Joao changed his previous statement made to an insurance agent. He had initially stated that the cars had to cross over into the opposing lane to pass the bus because the back of the bus had been sticking out four to five feet into the road. Mr. Joao clarified that "the bus was almost completely off the road."

According to Mrs. Joao, after the buses pulled over, the SUV and the Joaos' truck gradually sped up. Nahulu stated that she had not seen anyone in front of the bus nor had she crossed the double solid line prior to impact. Mrs. Joao stated that she did not see anyone in the crosswalk, but could not remember where the crosswalk was located.

Minor's friend was the last person to board Benson's bus. According to Benson, who had an unobstructed view through the front windows of his bus, Minor said goodbye to her friend as she stood near the right front corner of the bumper with her hand on the bus.

Minor testified that she looked both ways before entering a crosswalk in front of the bus; other witnesses provided conflicting testimony. Nahulu testified that Minor entered the road quickly from right in front of the bus without looking, walked diagonally across the road, and was not in a crosswalk when she was hit.[5] Mrs. Joao stated that "[Minor] was looking back over her shoulder towards the bus" as she entered the road close to the front of the bus outside of a crosswalk, but could not remember which side of the crosswalk Minor was on. Mr. Joao stated that "the bus was still moving" when Minor entered the

_____

[5] At trial, Nahulu testified that she had "mixed up" the placement of her car and Minor during her deposition. During her deposition, she had placed Minor in the crosswalk. At trial, Nahulu asserted that she ended up in the crosswalk, while Minor ended up on the Waianae side of the crosswalk.

road, looking over her shoulder and yelling as she ran. Benson stated that Minor remained near the front of his stationary bus as she moved diagonally toward the intersection at a brisk pace. He saw Nahulu's SUV approaching in his side view mirror near the left rear tire of his bus, and waved his arm out of the window and yelled in an attempt to stop the SUV. According to Paul Day ("Day"), the driver of a vehicle approaching the intersection in the opposing lane of traffic, Nahulu was "coming around the bus at a good speed[.]"

The witnesses provided conflicting testimony regarding Minor's location at the point of impact. Benson estimated that Minor traveled approximately six to eight feet from the front of the bus before she and the SUV collided in the middle of the Honolulu-bound lane. Day testified that Minor was hit by Nahulu's SUV when she made her way to the driver's corner of the bus. Mr. Joao could not recall whether Minor was in or out of the crosswalk. Mrs. Joao stated that "[Minor] was over the yellow line [in the opposing lane of traffic] when she ran in[to] the [SUV]."

By Benson's account, Minor "jumped a little bit" right before the SUV hit her, the SUV made contact, "then [he] heard skidding of the breaks[,]" and Minor was sent approximately twenty feet, bouncing or skipping on the pavement, until she finally came to rest in the middle of the Honolulu-bound lane.

Mrs. Joao stated that Minor flew back towards the direction she came from, landing partially in front of the Joaos' truck. Day stated that the collision "was a different kind of hit" that caused Minor to "slingshot up into the air" diagonally toward the middle line dividing the lanes rather than forward. He testified that Minor was hit on the passenger side of the SUV, which "was going at a speed where it couldn't stop in time[,]" and skidded "at least eight feet" after the impact before coming to rest in the crosswalk. He estimated that Minor flew between fifteen to twenty feet and fell diagonally, "almost straight down[,]" before landing "really hard" and sliding approximately one to two feet before coming to stop "in the middle of what would have been the divider[.]"

Neither Benson nor the Joaos saw Nahulu's SUV attempt to stop or veer to the left prior to the collision; Nahulu stated that after the impact, she veered to the left over the double solid line and came to a stop in the crosswalk. Mrs. Joao testified that the SUV swerved to the left a few feet from the front of the bus as soon as Minor entered the road and "stopped almost simultaneously" in the intersection, just past the bus, in the oncoming lane of traffic. Benson estimated that Nahulu's

SUV skidded approximately forty feet and came to rest about ten feet from Minor.[6]

Minor alleged severe physical injuries and psychological harm as a result of the accident.

B.    **Circuit Court Proceedings[7]**

On January 25, 2008, the Samsons filed a complaint in circuit court against Nahulu, alleging negligence, negligent infliction of emotional distress, and loss of consortium.

1.    **Motions in Limine Excluding Eyewitness Testimony on Speed**

The parties filed various motions in limine, contesting the admissibility of certain eyewitness testimony and evidence. Relevant motions include (1) Nahulu's Motion in Limine No. 5 to Exclude Any and All Questions to and Testimony by Lay Witnesses Concerning the Ultimate Issue of Defendant's Alleged Negligence (Motion in Limine No. 5), and (2) Nahulu's Motion in Limine No. 6 to Limit Testimony of Lay Witnesses to Personal Knowledge (Motion in Limine No. 6).

In Motion in Limine No. 5, Nahulu moved to preclude the Samsons from eliciting lay witness testimony on legal conclusions at trial, i.e., that Nahulu was going "too fast[,]"

---

[6]    At a pre-trial deposition, Benson testified that Nahulu's SUV skidded forty feet after the impact; **[85:26]**, however, he clarified at trial that Nahulu's SUV skidded and came to stop approximately ten feet from where Minor ended up.

[7]    The Honorable Rom A. Trader presided.

contending that lay opinions on liability are of no probative value and should be excluded under Hawai'i Rules of Evidence (HRE) Rule 403.  The Samsons argued that relevant lay opinion testimony bearing on ultimate issues is not precluded under HRE Rule 701, and that factual questions about conditions and speed, from which inferences may be drawn, are permitted.  The circuit court granted Nahulu's motion and precluded testimony that Nahulu was driving "too fast for the conditions" because "it calls in part for a legal conclusion and it's tantamount to testimony opinion that [Nahulu] was negligent."

In Motion in Limine No. 6, Nahulu moved to limit lay witness testimony to personal observations and preclude lay opinions about Nahulu's compliance with traffic laws, including testimony that she was driving "too fast," pursuant to HRE Rule 403.  The Samsons argued under HRE Rule 403 that the evidence was more probative than unduly prejudicial.  The court granted and denied the motion in part, precluding speculative testimony about Nahulu's thoughts and violation of traffic laws, while permitting testimony on personal observations.

## 2. Exclusion of Exhibit 7 and Related Testimony Placing Minor in a Crosswalk

During trial, the court excused the jurors to hold an HRE Rule 104 hearing on the admissibility of Exhibit 7 and related testimony from Benson, the driver of the first bus stopped at

the Jade street bus stop in the bus cutout. Exhibit 7 was a photograph of the accident scene that had markings made or authorized by Benson at his deposition, which depicted the point of impact in the middle of a crosswalk on Farrington Highway and the front of his bus in relation to the stop line. At the hearing, Benson confirmed that he had drawn the "X" showing the location of the front of his bus, but testified that someone else had drawn an "X" in the area he had indicated as the point of impact during his deposition. He admitted, however, that although he could not remember during the deposition or the hearing whether a marked crosswalk existed at the time, he had testified in his deposition that Minor had been struck in the area of the second "X."

Thus, at the HRE Rule 104 hearing, Benson could not recall whether the accident occurred in a crosswalk nor whether Exhibit 7 accurately depicted the area at the time of the accident. Several witnesses, including Nahulu, had testified that the crosswalk existed at the time of the collision. In addition, the same photograph showing the crosswalk without Benson's marks had already been admitted into evidence as the Samsons' Exhibit 3-B without objection.

At the conclusion of the hearing, the court excluded Exhibit 7 on the grounds that its admission would be unduly prejudicial because the photograph depicted the collision

occurring in the crosswalk despite Benson's inability to remember a crosswalk at the scene or verify the accuracy of the photograph.  The court noted that nothing prevented the Samsons from using a different photograph and Benson's testimony to establish the point of impact based on his personal knowledge.  In addition, the court rejected the Samsons' proposal for a limiting instruction because it feared the jury could not ignore the fact that Exhibit 7 indicated the point of impact in the crosswalk.

### 3.  Jury Instructions

At issue on certiorari are the Samsons' requested Instruction No. 12, which was refused, and Nahulu's requested Instructions Nos. 1 and 2, which were given, as well as Nahulu's requested Instruction No. 6, which was given as modified.  In addition, the Samsons raise issues regarding the instructions as a whole.[8]

---

[8]     In settling jury instructions, trial courts must comply with HRCP Rule 51(c) (2000), which states, in relevant part, as follows:

> Whenever the court refuses to give any requested instruction, the court shall write the word "refused" in the margin thereof. Whenever the court approves any requested instruction, the court shall write the word "given" in the margin thereof. Whenever the court modifies any requested instruction, the court shall mark the same in such manner that it shall distinctly appear what part is refused and what part is given. Instructions to which no objection is made shall be marked "given by agreement" and no later objection thereto may be made or allowed.

HRCP Rule 51(d) further provides, in relevant part:

(continued. . .)

### a. The Samsons' Requested Instruction No. 12

The Samsons' requested Instruction No. 12, which was refused, provided as follows:  "The duty to use reasonable care does not require the same amount of caution from drivers and pedestrians.  While drivers and pedestrians must be aware that motor vehicles can cause serious injuries, drivers must use more care to avoid collisions than pedestrians."

### b. Nahulu's Requested Instruction No. 1

Nahulu's requested Instruction No. 1, which was given over objection, stated "[a] pedestrian is required to obey all traffic laws which are applicable to her."

The Samsons objected on the basis that the requested instruction misstates HRS § 291C-71 (2007)[9] and "unduly

_____

(. . .continued)
> Any revision made and any instructions prepared by the court pursuant to the foregoing provisions shall be reduced by the court to writing, and counsel shall be entitled to be heard thereon. The court shall inform counsel of its proposed action with respect to any such revision made or instructions prepared by the court, and any changes therein made by the court shall be reduced to writing and submitted to counsel prior to their arguments to the jury.

In this case, the circuit court did not memorialize its rulings on the parties' requested instructions in writing as required by HRCP Rule 51. Accordingly, the circuit court's actions and modifications to the requested instructions were derived from the trial transcript.

[9]    HRS § 291C-71 provides as follows:

> (a)  A pedestrian shall obey the instructions of any official traffic-control device specifically applicable to the pedestrian, unless otherwise directed by a police officer.

(continued. . .)

13

highlights only the responsibilities of the plaintiff"
pedestrian to obey the law, as opposed to the defendant driver's
similar obligation. The circuit court gave the instruction over
the Samsons' objection because "the substance of the instruction
appears to be correct" and the court believed the instruction
would assist the jury.

### c. Nahulu's Requested Instruction No. 2

Nahulu's requested Instruction 2, which was given, stated
"[a] pedestrian who crosses a roadway outside of a crosswalk is
required to yield the right of way to all vehicles upon the
roadway."

The Samsons objected on the basis that the requested
instruction directly conflicts with HRS § 291C-73(a) (2007),
which provides, in relevant part, "[e]very pedestrian crossing a
roadway at any point other than within a marked crosswalk or
within an unmarked crosswalk at an intersection shall yield the
right-of-way to all vehicles upon the roadway." The Samsons
argued that the instruction (1) does not explain that a
pedestrian crossing in an unmarked crosswalk has the right-of-

---

(. . .continued)
      (b) Pedestrians shall be subject to traffic and
      pedestrian-control signals as provided in sections 291C-32
      and 291C-33.

      (c) At all other places, pedestrians shall be accorded the
      privileges and shall be subject to the restrictions stated
      in this chapter.

way, and (2) refers to all vehicles upon a roadway, yet is inconsistent with other instructions given with respect to the duties of a motorist (i.e., that a motorist cannot rely upon a right-of-way gained as a result of excessive speed, negligence, or statutory violation).  Upon consideration of HRS § 291C-73(a), the context within which the instruction was to be given, and another instruction taken from Arena (Instruction No. 6 as modified), discussed below, that purportedly addressed the Samsons' points, the court gave the instruction over the Samsons' objection on the grounds that it was neither incorrect nor misleading.

### d.    Nahulu's Requested Instruction No. 6 (as modified)

Nahulu's requested Instruction No. 6 stated "[a] person traveling upon a highway has a right to assume that all other persons will obey the law and is not required to keep a lookout for others who violate the law."

The Samsons objected on the grounds that the requested instruction misstates the law because it omits a portion of the quotation from Arena and states that no one is required to keep a lookout for others.  The circuit court gave a modified version of Nahulu's requested Instruction No. 6 by quoting a portion of Arena allegedly "in its entirety."

Instruction No. 6 (as modified) provided:

15

> A person traveling upon a highway has a right to assume that all other persons using the highway will obey the law and that one is not bound to keep a lookout for others who may violate the law applies only to those cases where the automobile is being driven in conformity to the law and not in violation thereof, and it has no application where the automobile is being driven in a negligent manner.

However, this instruction incompletely quoted <u>Arena</u>.  <u>See</u> 46 Haw. at 331, 379 P.2d at 604.  The quotation from <u>Arena</u> actually reads:

> <u>The rule that</u> a person traveling upon a highway has a right to assume that all other persons using the highway will obey the law and that one is not bound to keep a lookout for others who may violate the law applies only to those cases where the automobile is being driven in conformity to the law and not in violation thereof, and it has no application where the automobile is being driven in a negligent manner, <u>where it is not properly equipped with lights, or where it is being driven at an excessive rate of speed. In those instances the primary negligence of the driver of the automobile renders inoperative the rule stated</u>.

<u>Id.</u> (quoting <u>Cushing Ref. & Gasoline Co. v. Deshan</u>, 300 P. 312, 317 (Okla. 1931)) (emphasis added).

The Samsons conceded that the court's modification addressed their first concern "to a certain extent[,]" but maintained their objection.

### 4.    Verdict

On June 10, 2010, the jury returned a unanimous special verdict in favor of Nahulu, finding that she was not negligent. On August 9, 2010, the circuit court entered its Judgment in favor of Nahulu.  On August 11, 2010, the Samsons filed their JNOV motion.  On September 29, 2010, the circuit court entered its order denying the Samsons' JNOV motion.

### III. Appeal to the Intermediate Court of Appeals

On appeal, the Samsons raised issues concerning, <u>inter alia</u>, specific instructions, the jury instructions as a whole, and certain evidentiary rulings.  Regarding the jury instructions, the Samsons argued that Nahulu's proposed instructions were erroneous articulations of the law and unwarranted by the evidence.  In particular, the Samsons argued that (1) Instructions Nos. 1 and 2 omitted a driver's duty of care to avoid pedestrians upon a roadway and prejudicially suggested that a pedestrian's violation of any traffic law constituted negligence per se or a complete bar to recovery; (2) Instruction No. 6 (as modified) misquoted a judicial opinion, misapplied judicial precedent, improperly assigned a "right" that confused the jury in determining negligence, did not apply to vehicle-pedestrian accidents, and was precluded by HRS § 291C-74; and (3) the circuit court improperly failed to give the Samsons' proposed Instruction No. 12, which they contend correctly stated that drivers must exercise greater care to avoid collisions than pedestrians.  With respect to the evidentiary rulings, the Samsons argued that the circuit court abused its discretion when it granted Nahulu's motions in limine barring Day's deposition testimony that Nahulu was going at an "unsafe speed", and excluded Exhibit 7 and related testimony from Benson and refused to give a limiting instruction.

Nahulu asserted that the jury instructions, as a whole, were accurate and warranted by the evidence adduced at trial, and that the Samsons' proposed Instruction No. 12 was properly excluded because it imposed a higher duty of care on drivers and conflicted with other instructions.  Nahulu further argued that the circuit court properly excluded Day's testimony about Nahulu's speed because it amounted to legal conclusions under HRE Rule 701 and was prohibited by HRE Rule 403, and Exhibit 7 due to a lack of foundation.

The ICA held that "the jury instructions, as a whole, [showed that] the circuit court properly instructed the jury on a driver's obligation to drive with due care."  Samson v. Nahulu, No. CAAP-10-0000102, at 16 (App. Mar. 31, 2014) (mem.).[10]

---

[10]     The circuit court gave the following additional instructions about the duties of care for drivers and pedestrians:

Samsons' Instruction No. 8, given as modified over objection:

> The duty to observe ordinary care requires that a driver of an automobile must anticipate the possibility of meeting pedestrians or other vehicles at street crossings and have his or her automobile under such control as may be necessary to avoid colliding with a pedestrian on the roadway.
> A motorist must see what is in plain view on the roadway.
> A motorist must maintain a proper lookout straight ahead and laterally ahead.
> When necessary, a motorist must give a warning to a pedestrian by sounding the horn.
> Consistent with the foregoing, it is the law in Hawaii that every person shall drive at a safe and appropriate speed when approaching and crossing an intersection and when special hazards exist with respect to pedestrians or other traffic, regardless of the posted speed.

(continued. . .)

18

(. . .continued)

A motorist's failure to observe these requirements that results in a collision with a pedestrian is negligence.

Samsons' Instruction No. 6, given over objection:

Hawaii law requires that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the driver's horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused or incapacitated person upon a roadway.

Samsons' Instruction No. 4 combined with Nahulu's Instruction No. 5, given as modified over objection:

Hawaii law requires that a driver of a vehicle shall stop for a pedestrian who is crossing a roadway within a marked crosswalk when the pedestrian is on the half of the roadway on which the vehicle is traveling.
The driver shall not proceed until the pedestrian has passed the vehicle and the driver can thereafter proceed safely ahead.
A pedestrian who is using a marked crosswalk has the right to assume that an oncoming motorist will obey this law and yield to the pedestrian's right of way.
However, a pedestrian may not suddenly leave a curb or other place of safety and walk into the path of an oncoming vehicle such that it is impossible for a driver to yield.
If you find that the law was violated, you may consider this violation with all the other evidence in this case in deciding the issue of negligence.

Samsons' Instruction No. 5, given over objection:

It is the law in Hawaii that whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass the stopped vehicle.

Samsons' Instruction No. 10, given over objection:

The driver of a motor vehicle may not rely upon the right-of-way gained as a result of excessive speed or by other negligent act or violation of the law.

Samsons' Instruction No. 3, given over objection:

It is the law in Hawaii that yellow lines indicate the separation of lanes of traffic flowing in opposing directions or the left boundary of a traffic lane at a particularly hazardous location.
Double lines indicate maximum restriction.

(continued. . .)

With regard to challenges to specific instructions, the ICA held that Instructions Nos. 1, 2, and 6 did not amount to reversible error. Samson, mem. op. at 19. The ICA concluded that Instructions Nos. 1 and 2 were accurate reflections of the law, specifically HRS §§ 291C-71 and -73, respectively. Samson, mem. op. at 15-16. The ICA also acknowledged that Instruction No. 6 was "grammatically incorrect" and that a portion of the quote was "inadvertently left out[,]" but nonetheless concluded that the instruction was not erroneous because (1) both HRS § 291C-74 and Instruction No. 6 provide that a driver must exercise due care, (2) Instruction No. 6 would have accurately reflected the law as set forth in Arena "if properly quoted," (3) the quotation from Arena is applicable to vehicle-pedestrian collisions because pedestrians are expected to follow the rules of the road and fall within the statutory definition of "traffic[,]" and (4) one of the Samsons' instructions given to the jury was likewise based on Arena. Samson, mem. op. at 18-19. The ICA further concluded that "the grammatical error was not prejudicial to the Samsons" because the vagueness worked to Nahulu's detriment and the Samsons' burden to prove Nahulu's

---

(. . .continued)

> A double solid yellow line is used to indicate the separation between lanes of traffic moving in opposite directions.
> The crossing of a double solid yellow line by vehicular traffic is prohibited except when the crossing is part of a left turn movement.

negligence at trial remained the same.  Samson, mem. op. at 18.
The ICA also concluded that the circuit court did not err in
refusing to give the Samsons' proposed Instruction No. 12 on the
basis that "Hawaiʻi law does not support the proposition that, as
a matter of law, pedestrians can exercise less caution in their
actions than drivers."  Samson, mem. op. at 20.

Regarding evidentiary issues, the ICA concluded that Day's
testimony about Nahulu's speed was admissible under HRE Rule
701, however, the exclusion amounted to harmless error because
other evidence was presented to the jury relevant to breach of
duty that Nahulu may have been driving at an unsafe speed
without using the word "unsafe."  See Samson, mem. op. at 8-10.
In addition, the ICA concluded that the circuit court did not
abuse its discretion in excluding Exhibit 7 and related
testimony from Benson under HRE Rule 403, nor in denying the use
of a limiting instruction, as Benson was not able to provide
foundation testimony.  Samson, mem. op. at 4-6.

Accordingly, the ICA affirmed the circuit court's August 9,
2010 Judgment and September 29, 2010 order denying the Samsons'
JNOV motion.  Samson, mem. op. at 21.

## IV.  Standards of Review

### A.  Jury Instructions

> When jury instructions or the omission thereof are at issue
> on appeal, the standard of review is whether, when read and
> considered as a whole, the instructions given are

21

> prejudicially insufficient, erroneous, inconsistent, or misleading.

>> Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Tabieros v. Clark Equipment Co., 85 Hawaiʻi 336, 350, 944 P.2d 1279, 1293 (1997) (quoting State v. Arceo, 84 Hawaiʻi 1, 11, 928 P.2d 843, 853 (1996)).  "Jury instructions . . . must be considered as a whole.  Moreover, a refusal to give an instruction that correctly states the law is not in error if another expressing a substantially similar principle is given."  Montalvo v. Lapez, 77 Hawaiʻi 282, 286, 884 P.2d 345, 349 (1994) (alteration in original) (quoting State v. Pioneer Mill Co., 64 Haw. 168, 180, 637 P.2d 1131, 1140 (1981)).

## B.    Evidentiary Rulings

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

> Kealoha v. County of Hawaii, 74 Haw. 308, 319, 844 P.2d 670, 676 . . . (1993). . . .

> State v. Kupihea, 80 Hawaiʻi 307, 314, 909 P.2d 1122, 1129[] (1996) . . . . "Evidentiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." Walsh v. Chan, 80 Hawaiʻi 212, 215, 908 P.2d 1198, 1201[] (1995) (citing Sato v. Tawata, 79 Hawaiʻi 14, 19, 897 P.2d 941, 946 (1995)). . . . "'The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'"  State v. Ganal, 81 Hawaiʻi 358, 373, 917 P.2d 370, 385 (1996) (quoting State v. Furutani, 76 Hawaiʻi 172, 179, 873 P.2d 51, 58 (1994)).

22

Tabieros, 85 Hawaiʻi at 350-51, 944 P.2d at 1293-94 (quoting

Arceo, 84 Hawaiʻi at 11, 928 P.2d at 853), quoted in Estate of

Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351-52, 152 P.3d

504, 523-24 (2007).

## V.    Discussion

## A.    The ICA erred in determining that the jury instructions were not prejudicially erroneous or misleading

The Samsons argue that the ICA "grievously erred" in

affirming the verdict where erroneous instructions given,

specifically Nahulu's Instructions Nos. 1, 2, and 6, improperly

instructed the jury that (1) a driver need not anticipate

pedestrians who are not strictly following the law, and (2)

Minor forfeited her right to recover from a negligent driver if

she violated any traffic rules.  (citing Steigman v. Outrigger

Enter., Inc., 126 Hawaiʻi 133, 145, 267 P.3d 1238, 1250 (2011)).

### 1.    Alleged Error in Specific Instructions

### a.    Instruction No. 6 (as modified)[11]

Instruction No. 6 (as modified) is problematic:

> A person traveling upon a highway has a right to
> assume that all other persons using the highway will obey
> the law and that one is not bound to keep a lookout for
> others who may violate the law applies only to those cases
> where the automobile is being driven in conformity to the

_____

[11]    Nahulu's counsel conceded during oral argument that Instruction No. 6 (as modified) is garbled, and failed to respond in the briefs to the Samsons' assertion that Instruction No. 6 (as modified) was erroneous.  Oral Argument at 23:48, Samson v. Nahulu, 133 Hawaiʻi 451 (No. 10-102), available at http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc_scwc10_102.html.

> law and not in violation thereof, and it has no application
> where the automobile is being driven in a negligent manner.

The instruction is grammatically incorrect and confusing. As noted, the portion from Arena actually begins this quotation with "The rule that . . . ." 46 Haw. at 331, 379 P.2d at 604. Also, the instruction omitted the tail end of the quotation pertaining to instances in which a driver's primary negligence renders the rule inoperative. Id. A variation of the omitted portion of the quotation was given as a separate instruction, which stated that "[t]he driver of a motor vehicle may not rely upon the right-of-way gained as a result of excessive speed or by other negligent act or violation of the law." The ICA concluded that "if properly quoted, the instruction would have accurately reflected the law as set forth in Arena." Samson, mem. op. at 18. However, Arena and Instruction No. 6 (as modified) are erroneous iterations of the law. They misstate a driver's duty of care and conflict with our comparative negligence statute, HRS § 663-31,[12] which was enacted post-Arena

_____

[12]   HRS § 663-31(a) (1993) provides as follows:

> Contributory negligence shall not bar recovery in any
> action by any person or the person's legal representative
> to recover damages for negligence resulting in death or in
> injury to person or property, if such negligence was not
> greater than the negligence of the person or in the case of
> more than one person, the aggregate negligence of such
> persons against whom recovery is sought, but any damages
> allowed shall be diminished in proportion to the amount of
> negligence attributable to the person for whose injury,
> damage or death recovery is made.

in 1969.  As Arena noted, a right-of-way provided under the

state traffic code "is not absolute and cannot be exercised with

impunity under all circumstances."  46 Haw. at 316, 379 P.2d at

597.  As this court has explained previously,

> [t]he mere fact that the operator of a motor vehicle [has
> the right-of-way] does not in and of itself give such
> operator the right to proceed across the intersection in
> any event; [] where it becomes an issue of fact for a jury
> to determine whether or not in approaching or proceeding
> across an intersecting highway the operator of the motor
> vehicle[,] in the exercise of due care, might have avoided
> a collision and resultant injuries, an[] instruction to the
> effect that irrespective of the existing conditions such
> operator has a right to proceed across the intersection is
> erroneous.

Mossman v. Sherman, 34 Haw. 477, 481 (Terr. 1938) (quoting

McCombs v. Ellsberry, 85 S.W.2d 135, 140 (Mo. 1935)).

Therefore, a driver exercising a right-of-way may still be

determined to have been negligent under the attendant

circumstances.  Applying this precedent, Nahulu was required to

exercise due care to avoid collisions even if she had the right-

of-way and did not violate any traffic laws, and even if Minor

violated pedestrian traffic laws.  Instruction No. 6 (as

modified) incorrectly stated otherwise.

The Samsons argue that the ICA misstated the standard of

review for erroneous instructions when it concluded that

Instruction No. 6 (as modified) "did not require reversal

because the Samsons 'failed to show the instruction had any

detrimental effect on them.'"  The Samsons further argue that the

ICA's rationalization that the instruction's vagueness worked to

Nahulu's detriment "do[es] not amount to an affirmative showing that the erroneous instruction did not result in prejudice when reviewing the record as a whole, and thus [the ICA's] decision to affirm in spite of the improper instruction was grievous error[.]"

Nahulu argues that the Samsons misconstrue the ICA's Memorandum Opinion in that the ICA correctly found that Instruction No. 6 (as modified) was not erroneous, and thus, the Samsons are not entitled to any finding that the instruction was "presumptively harmful" given that the record and totality of instructions given are "devoid of prejudice[.]"

Instruction No. 6 (as modified) was erroneous as a matter of law. Arena was a criminal negligent homicide case in which this court held that the driver of a speeding car who killed the driver of a car exiting a private driveway did not have a "right" to assume that others would obey the law. 46 Haw. at 328, 379 P.2d at 603. In other words, the speeding driver was not shielded from criminal liability by having the right-of-way. The rule stated in Arena no longer applies because it was premised on the existence of contributory negligence, which was eliminated by the passage of Hawaii's comparative fault statute, HRS § 663-31. See 46 Haw. at 331, 379 P.2d at 604 (quoting Cushing, 300 P. at 317) (discussing contributory negligence); Steigman, 126 Hawai'i at 135, 267 P.3d at 1240 (explaining that

HRS § 663-61(a) "eliminates contributory negligence"). Moreover, such a rule "conflicts with the intent of the Legislature that the courts apply comparative negligence in the place of 'unfair' common law doctrines." 126 Hawai'i at 139, 267 P.3d at 1244.

In addition, Instruction No. 6 (as modified) directly conflicts with a driver's obligation to exercise due care to avoid colliding with pedestrians under HRS § 291C-74. Even without HRS § 291C-74, common sense and general negligence principles require a reasonable driver to look out for pedestrians given the foreseeable range of danger and gravity of possible harm. Knodle v. Waikiki Gateway Hotel, 69 Haw. 376, 388, 742 P.2d 377, 385 ("As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." (quoting W.P. Keeton, Prosser and Keeton on the Law of Torts § 31, at 171 (5th ed. 1984) (footnote omitted)). Stated differently, all drivers have a duty to look for "special hazards" with respect to pedestrians or other traffic, and must act reasonably under the circumstances. See HRS § 291C-101 (2007). Instruction No. 6 (as modified) incorrectly suggested that a driver need not look out for pedestrians violating the law and that civil recovery is not available to a contributorily negligent

plaintiff.  Instruction No. 6 (as modified) was prejudicially erroneous.

We therefore remand this case for a new trial.  To provide the circuit court with further guidance on remand, we address the other instructions and the evidentiary issues.

b.     Instructions Nos. 1 and 2

Instruction No. 1 stated "[a] pedestrian is required to obey all traffic laws which are applicable to her."  HRS § 291C-71 mandates that a pedestrian obey official traffic control devices "specifically applicable to the pedestrian" and "[a]t all other places, pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in this chapter."  HRS § 291C-71(a), (c).  Instruction No. 1, however, does not comport with the language of HRS § 291C-71. Instruction No. 1 broadened the statutory mandate from traffic and pedestrian-control devices to "all traffic laws" and leaves the jury guessing as to which laws a pedestrian must follow. Therefore, the circuit court's giving of the instruction was erroneous and the ICA erred in concluding that Instruction No. 1 was supported by HRS § 291C-71.

Instruction No. 2 similarly tracks the language of HRS § 291C-73.  Instruction No. 2 stated "[a] pedestrian who crosses a roadway outside of a crosswalk is required to yield the right of way to all vehicles upon the roadway."  HRS § 291C-73(a)

provides, "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." The parties disputed whether Minor was located in a crosswalk at the point of impact based on conflicting eyewitness testimony. Multiple witnesses, such as Nahulu, Benson, and Day, testified that Minor moved diagonally as she crossed the street in front of the bus parked at or near the stop line. Under the circumstances of this case, Instruction No. 2 should not have been given as it implies that a person who starts in crosswalk but moves out ever so slightly must yield the right-of-way to all vehicles, regardless of the circumstances. There are various circumstances that could cause a person to step out of a marked crosswalk, including moving out of the way of an oncoming vehicle. Instruction No. 2 suggests that such a pedestrian necessarily would be negligent for failing to yield the right-of-way. Instruction No. 2 was an improper categorical statement, and was therefore improperly given.

### c. The Samsons' Requested Instruction No. 12

The Samsons argue that the ICA erred in rejecting the Samsons' proposed Instruction No. 12 because Hawai'i law recognizes that "all persons . . . are also obligated . . . to exercise due care or ordinary care, commensurate with the

apparent risk[,]" including any imbalance in the parties'

capacity to inflict harm.  (quoting <u>Kahoʻohanohano v. Dep't of

Human Servs.</u>, 117 Hawaiʻi 262, 297, 178 P.3d 538, 573 (2008)).

The Samsons asserted that their "proposed instruction 12 was

wholly proper given the different degree of risk[,]" and

requested clarification on "the duty of care as between

pedestrians and motorists."

Nahulu contends that the Samsons' argument that motor

vehicle operators carry a "heightened" duty versus pedestrians,

as provided in Instruction No. 12, is contrary to existing

Hawaiʻi law and applicable federal decisions.

The Samsons' requested Instruction No. 12 provided as

follows:  "The duty to use reasonable care does not require the

same amount of caution from drivers and pedestrians.  While

drivers and pedestrians must be aware that motor vehicles can

cause serious injuries, drivers must use more care to avoid

collisions than pedestrians."  The Samsons cited <u>Bartlett v.

Melzo</u>, 88 N.W.2d 518 (Mich. 1958), and <u>Baumgartner v. State Farm

Mutual Automobile Insurance Co.</u>, 356 So.2d 400 (La. 1978),

<u>superseded by statute</u>, LA. CIV. CODE ANN. art. 2323 (1980)

(comparative fault), <u>as recognized in</u> <u>Turner v. New Orleans

Public Service Inc.</u>, 476 So.2d 800 (La. 1985), in their

Application and Opening Brief in support of their argument that

a driver's duty of ordinary care requires that a driver exercise

greater caution than pedestrians. These cases are, however, premised entirely on contributory negligence principles. 88 N.W.2d at 524 (holding that a pedestrian was not guilty of contributory negligence as a matter of law); 356 So.2d at 406 ("a plaintiff's contributory negligence will not bar his recovery").

As noted in our discussion, supra, of Instruction No. 6 (as modified), Nahulu was required to exercise due care to avoid collisions even if she had the right-of-way and did not violate any traffic laws, and even if Minor violated pedestrian traffic laws. The Samsons' proposed Instruction No. 12, however, went further and improperly stated that the duty to use reasonable care does not require the same amount of caution from drivers and pedestrians. This was an improper statement of the law. Thus, the instruction was properly refused.

2. **The Instructions as a Whole were Prejudicially Erroneous**

The Samsons also argue that the instructions, as a whole, gave the "erroneous impression that a driver need not anticipate pedestrians who are not strictly following the letter of the law, which is inconsistent with Hawaii's comparative negligence law." Turning to the instructions as a whole, we note that the circuit court instructed the jury that: (1) a pedestrian must obey all traffic laws (Instruction No. 1), (2) a pedestrian who

crosses outside of a crosswalk must yield the right-of-way to vehicles (Instruction No. 2), and (3) a person traveling upon a highway has a right to assume others will obey the law and is not required to keep a lookout for others (Instruction No. 6). In addition, the court instructed the jury about a driver's duty of ordinary care (Samsons' Instruction No. 8) in accordance with (1) Ferrage v. Honolulu Rapid Transit and Land Co., 24 Haw. 87, 91 (Terr. 1917) (anticipate possibility of pedestrians), (2) Sherry v. Asing, 56 Haw. 135, 143, 531 P.2d 648, 655 (1975) (driver's duty to avoid collisions with pedestrians), (3) Payne v. Sorenson, 599 P.2d 362, 364 (Mont. 1979) (motorist's line of sight), and (4) HRS § 291C-101 (safe and appropriate speed). Further, the court instructed the jury about the rights-of-way of pedestrians and drivers in crosswalks under HRS § 291C-72 (Samsons' Instruction No. 4 combined with Nahulu's Instruction No. 5), and a driver's duty to exercise due care to avoid colliding with pedestrians in accordance with HRS § 291C-74 (Samsons' Instruction No. 6). In addition, the court gave an instruction that summarized a different quotation from Arena regarding limitations to a driver's right-of-way (Samsons' Instruction No. 10). See 46 Haw. at 332, 379 P.2d at 605 ("[A]n operator of a motor vehicle cannot arbitrarily rely upon the right of way gained as a result of excessive speed or by other negligent act or violation of the law." (quotation marks and

citations omitted)). Finally, the court also instructed that a traffic law violation is evidence of, but is not conclusive of, negligence:

> The violation of a state or city law is evidence of negligence, but the fact that the law was violated is not sufficient, by itself, to establish negligence. The violation of the law must be considered along with all the other evidence in this case in deciding the issue of negligence.
> Whether there was a violation of a state or city law is for you to determine.

Although multiple instructions were given describing the duties of drivers and pedestrians,[13] the instructions, as a whole, improperly focused on a pedestrian's duties and gave the impression that a pedestrian is barred from civil recovery if he or she violates any traffic law.

The jury instructions will need to be revisited on remand. We now provide further guidance to the circuit court on remand regarding the evidentiary issues.

**B.  The circuit court erroneously excluded Day's testimony about Nahulu's Speed**

The Samsons argue that the ICA "grievously misapplied" the "same evidence" rule to find that the circuit court's wrongful exclusion of Day's "unsafe speed" testimony was harmless error. (citing Kekua v. Kaiser Found. Hosp., 61 Haw. 208, 219, 601 P.2d 364, 371 (1971)). Specifically, the Samsons argue that the ICA could not find that Day's eyewitness testimony was the same as or identical to other evidence presented to the jury. Further,

---

[13]  See supra note 10.

as the Samsons contend, no other testimony was given concerning the "inappropriateness of [Nahulu's] speed under the circumstances to the same degree as [Day's] excluded testimony[.]"  Speed was an important issue and the exclusion was clearly prejudicial.  The Samsons also request "that any standard for determining whether the exclusion of evidence is harmless error [] consider the importance of the evidence to the proponent's case.  (citing Adams v. Fuqua Industries, Inc., 820 F.2d 271, 273 (8th Cir. 1987)).

Nahulu argues that the ICA properly applied Kekua to find that "Day was able to provide essentially the same evidence through his detailed account of his observations" given his statements concerning Nahulu's vehicle and speed as well as other witnesses' testimony relevant to Nahulu's speed and alleged breach of duty, such as Benson's testimony.

Generally, a witness is permitted to give an opinion on an ultimate fact involved in the case, but may not give opinions on questions of law as that would amount to legal conclusions.  See HRE Rule 704; Create 21 Chuo, Inc. v. Southwest Slopes, Inc., 81 Hawai‘i 512, 522, 918 P.2d 1168, 1178 (App. 1996) ("[N]onexpert opinion that amounts to a conclusion of law cannot be properly received in evidence, since the determination of such questions is exclusively within the province of the court[.]").

The ICA correctly concluded that the circuit court erred in excluding Day's testimony. Given that Day had personal knowledge of the events due to his vantage point, his deposition testimony that Nahulu was traveling at an unsafe speed was relevant to an ultimate fact, and thus, was admissible. As the ICA correctly concluded, Day did not testify on any question of law, and any issues related to Day's definition of unsafe could have been addressed during cross-examination. Thus, the circuit court erred in excluding this testimony. As we are remanding for a new trial based on erroneous instructions, the harmless error issue is moot.

## C. Exhibit 7 should have been admitted

The Samsons argue that the ICA confused evidentiary sufficiency with unfair prejudice when it affirmed the circuit court's exclusion of Exhibit 7 and Benson's related testimony on point of impact. The Samsons assert that even though the evidence was not sufficient standing alone to establish that Minor was in a crosswalk and required a foundation laid by others, it was admissible because admitted evidence proved that there was a crosswalk at the scene and Benson's testimony rendered Minor's location in a crosswalk more likely than not. Moreover, they contend that the fact that the evidence was damaging to Nahulu's case does not establish unfair prejudice as

it did not suggest a decision on an improper basis.  (citing HRE Rule 403, Commentary).

Nahulu argues that the ICA correctly found the circuit court did not abuse its discretion in precluding the evidence due to a lack of foundation and consideration of the prejudicial effect substantially outweighing its probative value.

First, with respect to foundation, Exhibit 7 was an exhibit to Benson's deposition.  He placed the first "X" on the photograph of the scene, and adopted the placement of the second "X."  With the overwhelming testimony of other witnesses as to the existence of the marked crosswalk on the date of the accident, proper foundation existed for the admission of Exhibit 7.

Second, the circuit court actually excluded Exhibit 7 due to its belief that its admission would be unduly prejudicial based on Benson's testimony that he could not recall whether there was a marked crosswalk on the day of the accident.  This HRE Rule 403 ruling is reviewed for an abuse of discretion. Tabieros, 85 Hawai'i at 351, 944 P.2d at 1294.

Under HRE Rule 403, Exhibit 7 should have been admitted unless the probative value was substantially outweighed by its undue prejudicial effect.  "Probative evidence always 'prejudices' the party against whom it is offered since it tends to prove the case against that person."  State v. Klafta, 73

Haw. 109, 115, 831 P.2d 512, 516 (1992).  The commentary to HRE Rule 403 explains that "'[u]nfair prejudice,' as the Advisory Committee's Note to Fed. R. Evid. Rule 403 explains, 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  HRE Rule 403, Commentary.  In addition, overall considerations in making this determination include the actual need for the evidence, availability of other evidence on the same issues, probative weight of the evidence, and the potential for creating prejudice against the accused in the jurors' minds.  State v. Murphy, 59 Haw. 1, 9, 575 P.2d 448, 455 (1978) (discussed in HRE Rule 403 Commentary).

The jury, in determining the issue of negligence, was entitled to know Minor's location by a key eyewitness to the collision.  As the Samsons argue, there is nothing inherently prejudicial about a crosswalk that would lead the jury to determine negligence upon an improper basis.  Further, any potential prejudice could have been cured by a limiting instruction.

The ICA's reliance on State v. Sequin, 73 Haw. 331, 338, 822 P.2d 269 (1992), is misguided.  In Sequin, this court upheld a trial court's ruling excluding a photographic exhibit taken six months after the incident because multiple witnesses could not verify that it substantially depicted the area at the time

of the alleged offense and there was another diagram admitted into evidence that more clearly portrayed the area. In this case, Exhibit 7 substantially depicted the area because other witnesses, such as Nahulu and Mrs. Joao, were able to provide a foundation for a crosswalk at the intersection. In addition, the same photograph without the markings was admitted into evidence as Exhibit 3-B without objection.

Any potential prejudicial effect of Exhibit 7 did not substantially outweigh its probative value. Therefore, the circuit court should have admitted the exhibit.

## VI. Conclusion

Based on the foregoing analysis, we vacate the ICA's May 2, 2014 Judgment on Appeal, entered pursuant to its March 31, 2014 Memorandum Opinion, which affirmed the Circuit Court of the First Circuit's August 9, 2010 Judgment and September 29, 2010 Order Denying Plaintiffs' Motion for Judgment Notwithstanding the Verdict and/or, In the Alternative, for New Trial, and remand the case to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Ronald A. Albu<br>for petitioners | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Jonathan L. Ortiz and<br>Wade J. Katano<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

